UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
STACEY HARTLINE,

        Plaintiff,

   -against-                                  **MEMORANDUM & ORDER**

ANTHONY GALLO, DARREN GAGNON,        Civil Action No. 03-1974
MARLA DONOVAN, JIM SHERRY,             (DRH)
VILLAGE OF SOUTHAMPTON POLICE
DEPARTMENT and INCORPORATED
VILLAGE OF SOUTHAMPTON,

        Defendants.
-------------------------------------------------------X

**APPEARANCES**:

**The Law Offices of Frederick K. Brewington**
Attorneys for Plaintiff
50 Clinton Street, Suite 501
Hempstead, NY 11550
By:    Frederick K. Brewington, Esq.
        William E. Betz, Esq.
        Scott A. Korenbaum, Esq.
        G. William Germano, Esq.

**Devitt Spellman Barrett LLP**
Attorneys for Defendants
50 Route 111
Smithtown, New York 11787
By:    Jeltje deJong, Esq.

**HURLEY, Senior District Judge:**

       The purpose of this Memorandum is to address whether a new trial is warranted on the

following ground: the Court's failure to, sua sponte, instruct the jury that plaintiff's misdemeanor

drug arrest, standing alone, was insufficient as a matter of law to justify the strip search to which she was subjected.

**Background**

Plaintiff Stacey Hartline ("plaintiff") filed suit against defendants Anthony Gallo ("Gallo"), Darren Gagnon ("Gagnon"), Marla Donovan ("Donovan"), Jim Sherry ("Sherry") and the Incorporated Village of Southampton ("Southampton") (collectively "defendants") asserting various claims stemming from an alleged unlawful strip search conducted by Southampton Village Police on January 6, 2003. At the conclusion of discovery plaintiff moved for summary judgment on liability and defendants cross-moved for summary judgment. The Court granted defendants' motion finding that the strip search of plaintiff was accompanied by individualized reasonable suspicion that plaintiff was in possession of contraband and therefor the strip search did not violate plaintiff's constitutional rights. *See* Memorandum and Order dated Sept. 30, 2006 at 20. On appeal, the Second Circuit reversed. *Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008). The Circuit Court held, inter alia, that this Court had erroneously concluded that defendants were entitled to summary judgment on plaintiff's claim that the strip search was conducted in violation of the Fourth Amendment. When viewed in the light most favorable to plaintiff as non-movant, the Second Circuit concluded that the evidence on the motion demonstrated a violation because of the absence of individualized suspicion that she was secreting contraband on her person and remanded the case for further proceedings. *Id.* at 97.

Thereafter, the case was tried before a jury over a period of nine days. The jury returned a verdict in favor of the defendants. More specifically, the jury found that plaintiff did not

2

establish that Gallo, Gagnon, Donovan or Sherry violated her federal civil rights by either subjecting her to a strip search without reasonable suspicion in violation of the Fourth Amendment or denying her equal protection in violation of the Fourteenth Amendment.

Plaintiff thereafter moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, alternatively for a new trial pursuant to Fed. R. Civ. P. 59. By Memorandum and Order dated August 4, 2010, the Court denied the motion for judgment as a matter of law finding that the evidence at trial permitted the jury to conclude that the defendants had reasonable suspicion to believe that plaintiff was secreting contraband on her person. Memorandum and Order dated Aug. 4, 2010 at 3-11. Specifically, the Court concluded that

> the testimony at trial permitted the jury to conclude that the defendants had reason to believe that Hartline was under the influence of narcotics at the time of arrest as Gallo saw her smoking a marijuana pipe, the truck was filled with smoke, he found the smoldering pipe, she looked "stoned", and was "giggly." Officer Gallo found a container with only a small amount of marijuana, which according to Gallo Plaintiff identified as "shake", as well as several "roaches." Assuming the jury concluded that the amount of marijuana in the container was insignificant, the fact that the vehicle search did not disclose the source of the burning marijuana in the pipe could suggest that, unless the drugs in the pipe represented the last of her immediate stash, the remainder was on her person. (*Cf.* Tr. at 467 [[1]]) (Gagnon's testimony that "There wasn't a lot of marijuana there, and it is possible she secreted more on her person.").) Another suspicious fact found in the trial evidence was the large amount of cash discovered in her purse prior to the search according to the testimony. These facts support the existence of reasonable suspicion. *See, e.g., Wachtler v. County of Herkimer*, 35 F.3d 77, 80 (2d Cir. 1994) ("possession of $1,000 in cash might have seemed a ground for suspecting drug trafficking and the possible presence of contraband."); *Easton v.*

---

[1] "Tr." refers to the trial transcript.

> *City of New York*, 2009 WL 1767725 (E.D.N.Y. 2009) (that
> plaintiff was smoking marijuana at time of arrest, a bag of
> marijuana was found incident to his arrest and he was carrying
> $1,000.00 in cash supported reasonable suspicion for strip search).

*Id.* at 9-10 (footnotes omitted).

The Court then turned to the motion for a new trial which was premised on the argument that "defendants' stated justifications for the strip search lack credibility." Memorandum and Order dated Aug. 4, 2010 at 13. The Court found there was sufficient evidence to preclude it from concluding that the jury's verdict was seriously erroneous or a miscarriage of justice. *Id.* at 13- 14. However, having reviewed its charge to the jury the Court expressed concern as to whether its reasonable suspicion charge was proper even though plaintiff did not object to it. *Id.* at 14. As to reasonable suspicion, the Court charged the jury as follows:

> The Fourth Amendment to the United States Constitution provides in pertinent part, the right of the people to be secure in their persons against unreasonable searches shall not be violated.
> It is well established that the Fourth Amendment precludes officials from performing strip searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband upon their person, based upon the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.
> Reasonable suspicion has been defined by the appellate courts as something stronger than a hunch but something less than probable cause. To understand that definition you need to understand probable cause. That term, that is, probable cause, means reasonable grounds to believe that an offense has been committed by a suspect. Again, reasonable suspicion, the applicable standard here, is something less than probable cause but greater than a hunch.
> . . . To establish reasonable suspicion, the officers involved must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience. The factors that you may consider, among others,

and to the extent you deem it appropriate, in determining whether the defendant officers had reasonable suspicion at the time of the

search to believe plaintiff had illegal drugs hidden on her person include:

Excessive nervousness, unusual conduct, information showing pertinent criminal propensities, loose-fitting or bulky clothing, discovery of incriminating matter during less intrusive searches of their person or property, lack of employment or a claim of self employment, evasive or contradictory answers to questions, the crime charged; and the circumstances of the arrest.

This list is not meant to be exhaustive and no factor is necessarily dispositive; you may consider any, all, or none of these factors in making your determination. Nonetheless it may be helpful to you in reaching your decision.

Plaintiff maintains that defendants did not have reasonable suspicion to believe that she had contraband hidden on her body on January 6, 2003, and defendants contend that they did given the totality of the circumstances. It will be for you, as the trier-of-fact, to resolve this factual dispute.

To prepare you for that task, some further instructions are required; namely (1) although different persons may define the term differently, the search conducted by defendant Donovan was a "strip search" under both the officer's rendition of how the search was conducted as well as plaintiff's rendition, and (2) reasonable suspicion can be established by "collective" or "pooled" knowledge of the individual officers involved.

Thus, for example, should you find that defendant Gallo had sufficient information to give rise to reasonable suspicion that knowledge is equally attributable to defendant Gagnon who directed defendant Donovan to conduct a thorough search, and to defendant Donovan as well.

In sum, your job as to this second element of plaintiff's strip search cause of action is to determine whether there was reasonable suspicion to believe that plaintiff had illegal drugs on her person. If you find reasonable suspicion was present, then your verdict as to this federal claim must be for all defendants.

Tr. at 1592-95. As noted in this Court's earlier decision,

[The jury] charge failed to instruct the jury as to two matters referred to by the Second Circuit in reversing this Court's grant of summary judgment in favor the defendants. First, that the arrest for a misdemeanor drug offense by itself does not as a matter of

5

> law support reasonable suspicion necessary to justify a strip search.
> *See* 546 F.3d at 101. Second, that the search seemingly was not
>
> justified by security concerns given that plaintiff was taken to an
> empty cell for purposes of a search [and, once searched was]
> booked and released. *See id.* at 102. The question is whether
> either omission was error and, if so, was it an error sufficient to
> grant a new trial given plaintiff's failure to object to the Court's
> charge.

Memorandum and Order dated Aug. 4, 2010 at 16. The parties were requested to address these issues. The parties have filed their submissions and the matter is now ripe for determination.[2]

**Discussion**

The concerns expressed by this Court in its earlier decision have been assuaged. Considering the charge as a whole, the Court finds no error. Assuming arguendo there was error, it was not "plain error" which "affect[ed] a substantial right." The motion for a new trial is therefore denied.

**I.      There Was No Error In the Jury Charge**

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or if it does not adequately inform the jury of the law." *Schermerhorn v. Local 100, Transport Workers Union*, 91 F.3d 316, 322 (2d Cir. 1996). "[A] jury instruction will be deemed adequate if 'the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it.'" *Hathaway v. Coughlin*, 99 F.3d 550, 552 (2d Cir. 1996) (quoting *Schermerhorn*, 91 F.3d at 322).

In charging the jury on plaintiff's Fourth Amendment claim, the Court instructed that "[i]t

---

[2] Neither party ascribes any error to the Court's failure to instruct the jury that the search was not justified by security concerns and therefore that issue shall not be addressed.

is well established that the Fourth Amendment precludes officials from performing strip searches of arrestees charged with misdemeanors or other minor offenses, unless the officials have reasonable suspicion that the arrestee is concealing weapons, or other contraband based on the crime charged, the particular characteristics of the arrestee and/or the circumstances of the arrest." (Tr. at 1593.) The Court then proceeded to define reasonable suspicion, after which it advised that ['[t]o establish reasonable suspicion, the officer must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." (*Id.*) Next, the Court instructed the jury on the factors that the jury could consider "among others, and to the extent you deem it appropriate in determining whether the defendant officers had reasonable suspicion at the time of the search to believe that plaintiff had illegal drugs hidden of her person . . . ." (*Id.* at 1593-94.)

"[T]aken as a whole and viewed in light of the evidence," *Hathaway*, 99 F.3d at 552, the charge had no tendency to mislead or confuse the jury. The evidence submitted at trial and the arguments posed by counsel in no way implied that an arrest for a misdemeanor drug offense by itself provided reasonable suspicion for the strip search. Rather, the focus was on whether Defendants had fabricated factors to support reasonably suspicion. For example, plaintiff challenged Officer Gallo's testimony that he saw plaintiff smoking a marijuana pipe as she drove by him through, among other things, evidence of the dark tint on the windows of plaintiff's truck. She also challenged when defendants discovered the large amount of cash in her purse, attempting to prove that it was not discovered until after the search and therefore could not be used to support reasonable suspicion. Defendants' trial testimony that plaintiff looked "stoned" and was "giggling" was disputed through arrests reports stating plaintiff's appearance to be

7

"fine." Finally, no one testified that Hartline was searched solely because she was arrested for a misdemeanor drug charge.

## II. Assuming There Was Error It Was Not Plain Error Affecting a Substantial Right

It is well established that a right may be forfeited "by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *U.S. v. Olano*, 507 U.S. 725, 731 (1993) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)) (internal quotation marks omitted). Rule 51 of the Federal Rules of Civil Procedure makes clear that a party has an affirmative obligation to raise an objection to the jury charge. Fed. R. Civ. P. 51. The rule requires a party to make their objection "on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c) (1). The objecting party is required to object at the charging conference, or at the very least prior to the jury being charged. *See* Fed. R. Civ. P. 51(b). Thus, a party may only assign an error to a jury instruction or verdict sheet "if that party properly objected." Fed. R. Civ. P. 51(d)(1)(A). The rule provides a court with "an opportunity upon second thought, and before it is too late, to correct any inadvertent or erroneous failure to charge." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 274 (1981) (citation and internal quotation marks omitted). In the absence of an objection, the Rule permits a court to consider "a plain error in the instruction" but only if "the error affects a substantial right." Fed. R. Civ. P. 51(d)(2). The advisory committee notes explain that:

> Many circuits have recognized that an error not preserved under Rule 51 may be reviewed in exceptional circumstances. The language adopted to capture these decisions in subdivision (d)(2) is borrowed from Criminal Rule 52. Although the language is the same, the context of civil litigation often differs from the context of criminal prosecution; actual application of the plain-error standard takes account of the differences.

Fed. R. Civ. P. 51 (2003 advisory committee notes).[3] Thus, "the plain error exception 'should only be invoked with extreme caution in the civil context.'" *Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir.1996) (quoting *United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir.1995)). "Only where an unpreserved 'error is so serious and flagrant that it goes to the very integrity of the trial' will a new civil trial be warranted." *Pescatore*, 97 F.3d at 18 (quoting *Brenner v. World Boxing Council*, 675 F.2d 445, 456 (2d Cir.1982). Under this highly stringent standard,[4] and under the facts of this case,[5] plaintiff has not shown that such relief is warranted.

In support of her position plaintiff asserts:

> The Court instruction redounded to Ms. Hartline's detriment in two ways. First, and foremost it stripped Ms. Hartline of the opportunity to have the jury accept her theory of the case. As the Court may recall, the crux of plaintiff's argument was that no basis existed to strip search Ms. Hartline. Tr. at 1544 ("the responsibility that they had to Ms. Hartline was not to strip search her, particularly since they had no suspicion , reasonable

---

[3] *Cf. SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 343 (2d Cir. 2004) (applying fundamental error standard where party failed to object to instruction at the charging conference, after the jury charge, or as part of the post-trial motions and noting "Fundamental error is a more exacting standard than the plain error standard in the criminal context and must be so serious and flagrant that it goes to the very integrity of the trial.").

[4] *See generally SCS Commc'ns*, 360 F.3d at 343 ("We have found fundamental error where the jury instructions were hopelessly confusing and . . . failed to provide even the barest legal guideposts to aid the jury in rationally reaching a decision. Moreover, a jury verdict will be reversed only when an appellant can show that the instructions as a whole prejudiced it.") (internal quotations and citations omitted) (ellipses in original). *See also Countryman v. Farber*, 340 Fed. Appx. 703, 2009 WL 2223050 (2d Cir. July 27, 2009) (noting that the Court was aware of only four cases in which the Circuit had vacated a jury verdict on the ground that an unpreserved Rule 51 error was fundamental); *Kerman v. City of New York*, 374 F.3d 93, 128 (2d Cir. 2004).

[5] As noted in its Memorandum and Order of August 4, 2010, plaintiff did not object at trial to the Court's instruction and did not argue in its post-trial motion that the charge was erroneous.

9

> suspicion, not even close"). Time and again Mr. Brewington
> argued that the evidence established that the officers manufactured
> reasonable suspicion after the fact. . . . The court's reasonable
> suspicion charge, however, negated the thrust of counsel's closing
> argument, no less aspects of the proof on which that argument
> relied.

(Pl.'s Sept. 3, 2010 Ltr Brief (Dkt. No. 126) at 3-4.)

Plaintiff's primary position at trial was that she was strip searched because it was the policy of defendant police department to strip search all females.[6] The following portion of plaintiff's opening statement is illustrative:

> The US Constitutional rights implicated in this case are the
> Fourth Amendment, which the Judge will describe to you in detail
> at the end. It in essence prohibits unreasonable search and seizure.
> There are ten amendments to the Bill of Rights. That is
> perhaps one of the most important - although all are crucially
> important. But the Four[teen]th Amendment prohibits a violation
> of a person's right to equal protection of the law.
> If somebody belongs to a certain class or gender that is
> discriminated against officially – when I say officially - by [a]
> government entity or agents, operating under color of law, then that
> entity or those persons are liable to the plaintiff for her – for a
> violation of her rights to equal protection of the law.
> In this case we are alleging Ms. Hartline was discriminated
> against because of her gender. We are alleging that there was a
> policy in the Village of Southampton, the municipal defendant, to
> strip search all females who are arrested and placed in cells,
> regardless of what the charges were against them, and that this

---

[6] The Court instructed the jury that Plaintiff was required to prove that her strip search occurred without reasonable suspicion as an element of her Equal Protection claim. (Tr. 1598.) Plaintiff, consistent with the agreed upon charge of the Court, has not pursued her Equal Protection claim in her post trial submissions except to the extent of stating: "Because the jury's verdict regarding her strip search claim necessarily dictated a verdict in the defendants' favor with regard to the Equal Protection Claim, [she] did not press this argument in her moving papers. If, however, the Court agrees that Ms. Hartline is entitled to judgment as a matter of law or a new trial, then the jury's verdict on the Equal Protection Claim must be vacated." (Reply Declar. of Frederick K. Brewington ¶6.) As no separate challenge to the Equal Protection claim exists, that claim is not separately addressed by the Court.

policy did not apply to males, only females.

(Tr. at 149.) The clear import of plaintiff's opening argument and her theory of the case was that she was strip searched because it was the municipality's policy to strip search all females and defendants manufactured, i.e. lied about, such things as seeing plaintiff smoking a pipe, finding money in her purse before the strip search and observing plaintiff acting like she was high. Her theory was not that she was strip searched because the police found her with a small amount of marijuana and/or charged her with misdemeanor possession. Indeed, in closing, plaintiff's counsel argued as follows:

> What is also clear is that [defendant Gallo] knew exactly what he was going to subject Ms. Hartline to when he put her in his car. How do we know that? Because he says, he radioed in, I've got a female. Why? Well, I knew that we would have to have a female officer or matron to search her.
> He knew there's going to be a search, and he knew what the policy was in Southampton about searching women. He knew that.
> . . .
> He knew that she would be strip searched, as all females are, in the village . . . .

(Tr. at 1547-48; see also *id.* at 1568 ("And who caused that? The gang of four over there. Because they subjected her to that, and they didn't have any reason to do it, except it was their policy of all women.").) Given the absence of any argument by plaintiff that she was strip searched merely because of the small amount of marijuana discovered in her car or because she was charged with a misdemeanor drug offense,[7] the absence of a specific instruction that as a matter of law the arrest for a misdemeanor drug offense by itself did not provide reasonable

---

[7] The Court also notes that defendants did not argue during the trial the converse, i.e. that either the charges against plaintiff or the small amount of marijuana by itself provided reasonable suspicion

11

suspicion was not clear error affecting a substantial right. And, as noted, that principle was adequately conveyed to the jury by the portion of the Court's charge which explained "It is well established that the Fourth Amendment precludes officials from performing strip searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband upon their person, based upon the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." (Tr. at 1593.)

Nor is the Court convinced , as plaintiff now maintains, that it committed error when after listing some of the factors that the jury could consider in determining the issue of reasonable suspicion it stated: "This list is not exhaustive and no factor is necessarily dispositive; you may consider any, all, or none of these factors in making your determination." First, that portion of the charge was added at the specific request of plaintiff. (*See* Tr. at 1440.) Second, the Court finds unconvincing plaintiff's current argument that the instruction conveyed to the jury that it could considered the crime charged "alone." (Pl.'s Sept. 3, 2010 Ltr Br. at 3.) That now challenged portion of the charge must be viewed in the context of the total charge. So viewed, Plaintiff's argument clearly falls short of the mark.

Similarly unpersuasive is plaintiff's argument that the Court "compounded its erroneous jury instruction" when, in response to a query by the jury as to whether the Court could provide them with a definition of "hunch," it advised the jury that a hunch is "an inchoate and unparticularized suspicion of criminal wrongdoing," thereby "invit[ing] the jury to find in favor of the defendants." (Pl.'s Sept. 3, 2010 Ltr Br. at 4.) As defendants accurately note: "The definition was taken from *Illinois v. Wardlow,* 528 U.S. 119 (2000) and was discussed with

counsel and was not objected to by plaintiff's counsel.  In fact, [plaintiff's counsel] stated, 'I think that was one of the charges we provided to you.' Tr. 1649." (Defs.' Sept. 9, 2010 Ltr Br. (Dkt. No. 128) at 3.)

## Conclusion

For the reasons set forth above and in the Court's Memorandum and Order dated August 4, 2010, the motion for a new trial is denied.

**SO ORDERED.**

Dated: Central Islip, New York
December 14, 2010

/s/
Denis R. Hurley
Senior District Judge